1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA ANNE GOLTZ, | Case No. 1:23-cv-00183-SAB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DIRECTING CLERK OF THE COURT TO ENTER JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF REBECCA ANNE GOLTZ AND TO CLOSE THIS ACTION |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |
| | (ECF Nos. 16, 18, 19) |

## I.

## INTRODUCTION

Rebecca Anne Goltz ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff requests the decision of Commissioner be vacated and the case be remanded for further proceedings, arguing the Administrative Law Judge (1) erred by finding the opinion from

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes. (See ECF Nos. 10, 11, 12.)

Don Paxton, M.D. "not persuasive" without proper consideration of the supportability and consistency of the opinion with the record, and (2) failed to include work-related limitations in the Residual Functional Capacity consistent with the nature and intensity of Plaintiff's limitations, and failed to offer clear and convincing reasons for rejecting Plaintiff's subjective complaints.  For the reasons explained herein, Plaintiff's Social Security appeal shall be denied.

## II.

## BACKGROUND

### A.    Procedural History

Plaintiff protectively filed an application for supplemental security income on October 20, 2020.  (AR 15.)  Plaintiff's application was initially denied on March 30, 2021, and denied upon reconsideration on June 25, 2021.  (AR 73, 90.)  Plaintiff requested and received a hearing before the Administrative Law Judge ("ALJ") on July 16, 2021.  (AR 105.)  Plaintiff appeared for the hearing on February 16, 2022.  (AR 33-56.)  On March 1, 2022, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 15-27.)  On December 5, 2022, the Appeals Council denied Plaintiff's request for review.  (AR 1.)

### B.    The ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, March 1, 2022:

1.  Plaintiff has not engaged in substantial gainful activity since October 2, 2020, the application date.

2.  Plaintiff has the following severe impairments: thoracic and lumbar spine degenerative disc disease and spondylosis with midthoracic scoliosis, right ankle ligament tears and tendinosis, and obesity.

3.  Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

4.  Plaintiff has the residual functional capacity to perform light work, except she can frequently stoop, balance, kneel, crawl, and occasionally climb and crouch.

5.  Plaintiff is capable of performing past relevant work as a cashier.

1    6.   Plaintiff has not been under a disability, as defined in the Social Security Act since
2         October 2, 2020.
3  (AR 33-56.)

**III.**

**LEGAL STANDARD**

**A.   The Disability Standard**

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[3] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

[3] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

1   Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is

2   on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A

3   claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of

4   proof from step one through step four.

5         Before making the step four determination, the ALJ first must determine the claimant's

6   RFC. 20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971,

7   at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [her] limitations"

8   and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1);

9   416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are

10   not severe.  20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p,

11   available at 1996 WL 374184 (Jul. 2, 1996).[4]  A determination of RFC is not a medical opinion,

12   but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. §§

13   404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ as responsible for

14   determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine

15   residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

16         At step five, the burden shifts to the Commissioner, who must then show that there are a

17   significant number of jobs in the national economy that the claimant can perform given her RFC,

18   age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d

19   1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines

20   ("grids") or rely upon the testimony of a VE.  See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsburry,

21   468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-

22   step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical

23   testimony, and for resolving ambiguities.' "  Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala,

24   53 F.3d 1035, 1039 (9th Cir. 1995)).

25   / / /

26

27   [4] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20
C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they
are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir.

28   1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

**B.    Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).   "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly erroneous standard).  "[T]he threshold for such evidentiary sufficiency is not high." Biestek, 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. Stout, 454 F.3d at 1055–56.  Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is

1  the ALJ's conclusion that must be upheld."  Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart,

2  400 F.3d 676, 679 (9th Cir. 2005)).

3                                    **IV.**

4                        **DISCUSSION AND ANALYSIS**

5          On appeal, Plaintiff raises two challenges to the ALJ's decision. Plaintiff first contends that

6  the ALJ erred by discounting the opinion of Dr. Paxton.  Plaintiff further contends that the ALJ

7  committed harmful error by failing to provide clear and convincing reasons to discount Plaintiff's

8  symptom testimony.  The Court shall address each in turn.

9          **A.     Whether the ALJ erred in evaluating Dr. Paxton's opinion**

10         The Court shall first consider Plaintiff's argument that the ALJ erred by finding the opinion

11  from Don Paxton, M.D. "not persuasive" without proper consideration of the supportability and

12  consistency of the opinion with the record.  (Pl.'s Opening Brief ("Mot."), ECF No. 16 at 9.)[5]

13  Plaintiff contends the ALJ failed to explain how Dr. Paxton's notes contained within a January 19,

14  2022 pain management progress report are inconsistent with his opinion rendered the same day;

15  rather, Plaintiff avers the ALJ erroneously cherry-picked from the notes, which resulted in a

16  mischaracterization of evidence.  (Id. at 10-11.)  Plaintiff argues the ALJ only referenced Dr.

17  Paxton's note that Plaintiff's pain could improve to a "4"—which Plaintiff argues is considered

18  "distressing" on the numeric pain scale—with medications, but omitted that Plaintiff reported a

19  current pain level of "9" during the January 19, 2022 visit.  (Id. at 11.)  Plaintiff argues the ALJ

20  failed to support the assertion that Plaintiff's lowest pain level of 4, with a worst pain level of 9, is

21  inconsistent with Dr. Paxton's opinion.  (Id.)  Further, Plaintiff argues the ALJ's notation that

22  Plaintiff reported "doing well" in Dr. Paxton's notes is inconsistent with Dr. Paxton's opinion, given

23  the description is not an objective measurement.  (Id.)  Plaintiff argues the ALJ cherry-picked

24  references to Plaintiff's lowest reported pain level and examinations findings that were normal to

25  the ignorance of Plaintiff's more severe reports of pain and abnormal examination findings. (Id. at

26  13.)

27  _____

28  [5] All references to pagination of party briefing pertains to those as indicated on the upper right corners via the
    CM/ECF electronic court docketing system.

1    Plaintiff also argues the ALJ's assertion that Dr. Paxton's January 19, 2022 findings on
2    Plaintiff's physical examination "were also generally within normal limits" because there was full
3    thoracic range of motion and full strength in all extremities does not fully account for the abnormal
4    physical examination findings, which Plaintiff avers were inadequately explained by the ALJ.  (Id.
5    at 11; see also Pl.'s Reply ("Reply"), ECF No. 19 at 2-3.)  Plaintiff argues the ALJ's vague assertion
6    that Dr. Paxton's objective findings on January 19, 2022 are insufficient to support his same-day
7    opinion is not substantial evidence to discount the opinion.  (Mot. 11-12.)

8    Plaintiff also maintains that the ALJ's finding that Dr. Paxton's opinion of Plaintiff's
9    limitations regarding breaks, absences and being off task are "speculative and without clear or
10   persuasive support" is inadequately explained.  (Id. at 12.)  Plaintiff avers every medical opinion
11   regarding functional capacity requires an inference based on the objective findings and a medical
12   professional's interpretation of those findings.  (Id.)  Plaintiff maintains the ALJ failed to offer a
13   basis for doubting Dr. Paxton's professional judgment. (Id.)

14   Additionally, Plaintiff avers the ALJ did not credit the "other three medical sources" that
15   found Plaintiff significantly less limited and in fact found they did not adequately address Plaintiff's
16   pain and symptoms.  (Id.)  Specifically, Plaintiff argues Robert Wagner M.D.'s opinion based on a
17   "single brief examination" was "clearly uniformed" as he based his assessment on a speculative
18   diagnosis of "occasional musculoligamentous strain," while the records actually showed
19   degenerative disc disease and scoliosis.  (Id.)  Plaintiff argues the ALJ's reference to the other
20   opinions, which Plaintiff avers the ALJ "essentially conceded fail to reflect the reality of the medical
21   records," is not substantial evidence to discount Dr. Paxton's opinion.  (Id.)  Plaintiff thus avers the
22   ALJ's failure to consider the consistency of Dr. Paxton's opinion with longitudinal record is legal
23   error.  (Id. at 13.)

24   Defendant argues Plaintiff's reported pain level of 9 on January 19, 2022 "appears connected
25   to her shoveling snow about two weeks prior."  (Def.'s Responsive Brief ("Opp'n."), ECF No. 18
26   at 21.)  Defendant underscores that the same note reflecting Plaintiff's current pain level of 9—
27   which means "excruciatingly unbearable" on the reference chart—states Plaintiff was "in no acute
28   distress," that Plaintiff's pain "does not go away completely but eases up to the point [that] it's not

debilitating," that Plaintiff was "doing well on opioids," and experienced "moderate relief from current medications and [was] moderately able to carry out activity of daily living" and "daily routine physical activities." (Id. at 22.) Defendant notes Dr. Paxton found Plaintiff had "shown moderate functional improvement" and his plan was to "continue with current medications and dosage." (Id.) Defendant avers Plaintiff's issue with the ALJ's note that Plaintiff reported she was "doing well" in Dr. Paxton's notes is taken out of context given the ALJ relied on the Dr. Paxton's full explanation of "doing well" contained in his note to reasonably find the note inconsistent with his same-day opinion. (Id.) In response to Plaintiff's contention the ALJ erred by finding Dr. Paxon's opinion regarding breaks, absences and being off task, Defendant avers the ALJ resolved a dispute between conflicting medical records of Dr. Paxton and the other three providers and provided valid reasons for find Dr. Paxton's opinion unpersuasive. (Id. at 18.)

Defendant also argues the ALJ reasonably found the medical opinions Roger Wagner, M.D., G. Dale, M.D., and J. Lane, M.D. mostly persuasive because they were well supported and consistent with the record. (Id.) Defendant specifically notes that rather than "not credit[ing]" the three other medical sources, the ALJ found the opinions and findings by the three sources "mostly persuasive." (Id. at 19.) Defendant specifically notes Dr. Wagner performed a full physical examination of Plaintiff, reviewed Plaintiff's medical records before forming his opinion, and while he did not yet have access to imaging, Dr. Wagner assessed Plaintiff based on her "chief complaints" of "low back pain" and "ankle pain." (Id. at 19-20.) Defendant points out the ALJ found Dr. Wagner's opinion was "supported by his thorough exam" and the ALJ determined Dr. Wagner's opinion is consistent with the longitudinal record, including the evidence received after Dr. Wagner's opinion. (Id. at 20.) Defendant notes Plaintiff does not contest a single finding within Dr. Wagner's opinion, nor does she contest whether Dr. Wagner's opinion is consistent with the longitudinal record. (Id. at 19-20.) Defendant also noted the ALJ found the other two opinions are consistent with the longitudinal record. (Id.) Further, Defendant avers the ALJ read Dr. Paxton's physical evaluation findings in the context of the note and the record and interpreted Plaintiff's reports she was "doing well" and Dr. Paxton's notes that Plaintiff had shown moderate functional improvement, moderate relief, and moderate ability to carry out activity of daily living to be a

1  reasonable interpretation.  (Id. at 24.)

2       1.   Legal Standards

3       Where, as here, a claim is filed after March 27, 2017, the revised Social Security

4  Administration regulations apply to the ALJ's consideration of the medical evidence.  See

5  Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions), 82 Fed. Reg.

6  5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  Under the updated

7  regulations, the agency "will not defer or give any specific evidentiary weight, including

8  controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including

9  those from [the claimant's own] medical sources."  20 C.F.R. §§ 404.1520c(a); 416.920c(a).

10  Thus, the new regulations require an ALJ to apply the same factors to all medical sources when

11  considering medical opinions, and no longer mandate particularized procedures that the ALJ must

12  follow in considering opinions from treating sources.  See 20 C.F.R. § 404.1520c(b) (the ALJ "is

13  not required to articulate how [he] considered each medical opinion or prior administrative

14  medical finding from one medical source individually."); Trevizo v. Berryhill, 871 F.3d 664, 675

15  (9th Cir. 2017).  As recently acknowledged by the Ninth Circuit, this means the 2017 revised

16  Social Security regulations abrogate prior precedents requiring an ALJ to provide "clear and

17  convincing reasons" to reject the opinion of a treating physician where uncontradicted by other

18  evidence, or otherwise to provide "specific and legitimate reasons supported by substantial

19  evidence in the record," where contradictory evidence is present.  Woods v. Kijakazi, 32 F.4th

20  785, 788–92 (9th Cir. 2022).

21       Instead, "[w]hen a medical source provides one or more medical opinions or prior

22  administrative medical findings, [the ALJ] will consider those medical opinions or prior

23  administrative medical findings from that medical source together using" the following factors:

24  (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; [and] (5)

25  other factors that "tend to support or contradict a medical opinion or prior administrative medical

26  finding."  20 C.F.R. §§ 404.1520c(a), (c)(1)–(5).  The most important factors to be applied in

27  evaluating the persuasiveness of medical opinions and prior administrative medical findings are

28  supportability and consistency.  Woods, 32 F.4th at 791 (citing 20 C.F.R. §§ 404.1520c(a),

(b)(2)).  Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions … will be."  20 C.F.R. § 404.1520c(c)(1).  Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be."  20 C.F.R. § 404.1520c(c)(2).

Accordingly, the ALJ must explain in her decision how persuasive she finds a medical opinion and/or a prior administrative medical finding based on these two factors.  20 C.F.R. § 404.1520c(b)(2).  The ALJ "may, but [is] not required to, explain how [she] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue.  20 C.F.R. §§ 404.1520c(b)(2)–(3).  Further, the ALJ is "not required to articulate how [she] considered evidence from nonmedical sources."  20 C.F.R. § 404.1520c(d).  Nonetheless, even under the new regulatory framework, the Court still must determine whether the ALJ adequately explained how she considered the supportability and consistency factors relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence.  See Martinez V. v. Saul, No. CV 20-5675-KS, 2021 WL 1947238, at *3 (C.D. Cal. May 14, 2021).

### 2.    Dr. Paxton's Opinion

On January 19, 2022, Dr. Paxton filled out a questionnaire regarding Plaintiff's impairments wherein he cited degenerative disc disease and clinical findings of mid and lower thoracic spondylosis and degenerative disc disease at L3-L4 with central disc bulge.  (AR 24, 483.)  As a result of the impairments, Dr. Paxton opined that Plaintiff was limited to walking half a city block without rest or severe pain; sitting two hours at one time and for a total of about two hours "to comfort" in an eight hour workday; standing for 15 minutes at one time and standing or walking less than two hours total in an eight-hour workday; needing a job that permits shifting positions at will from sitting, standing, or walking; needing periods of walking around during an eight hour workday, occurring every 30 minutes for five minutes each time; needing unscheduled breaks during a workday about every 30 minutes for five minutes each time; frequently lifting and carrying less than

10 pounds; occasionally twisting, stooping, crouching or squatting, and climbing stairs; rarely climbing ladders; being off task 10% of a typical workday; being capable of moderate stress (normal work); and would be likely miss work two days per month. (AR 24, 484-85.) The ALJ found Dr. Paxton's opinion "not persuasive, as the extreme limitations outlined are not consistent with or supportable by the medical evidence." (AR 24.)

According to Plaintiff, the ALJ erred because she failed to give adequate reasons for discounting Dr. Paxton's opinion. The Court disagrees. The ALJ first cited a specific example of Dr. Paxton's own notes that occurred the same day he filled out the questionnaire:

> Dr. Paxton's treatment notes from the claimant's appointment on the same day his opinion was rendered show that the claimant was "doing well," able to perform activities of daily living, and reported a pain severity with medication at a four out of 10, inconsistent with limitations of the extreme degree outlined. Findings on physical examination were also generally within normal limits, including normal thoracic spine range of motion and full strength in all extremities. While there are some abnormal exam findings, they do not persuasively support all of the limitations identified. For instance, there is no support for the inability to sit for more than two hours total (Ex. 16F: 21). Additionally, the limitations regarding breaks, absences, and being off task are speculative and without clear or persuasive support.

(Id.) Plaintiff challenges the ALJ's finding both for failing to explain how the notes are inconsistent with Dr. Paxton's opinion and for erroneously cherry-picking from the note, resulting in a mischaracterization of evidence. (Mot. 10-11.)

Plaintiff specifically takes issue with the ALJ's extraction from Dr. Paxton's note that Plaintiff is "doing well" and that her pain reduced to a four with medications given the relative meaning of "doing well" and the fact that a level four is still considered "distressing." (Id.) Viewing Plaintiff's subjective reports in the context of Dr. Paxton's January 19, 2022 treatment note as a whole, a section entitled "history of present illness" notes that Plaintiff is "doing well"; complains of "low back radiation bilateral hips and bilateral lower extremity"; reports a pain level of nine without medication and four with medication; reports she is "able" to perform activity of daily living; and that "exercises, hep, and medications" bring "pain relief 50-75%." (AR 556.) Dr. Paxton also noted Plaintiff was "doing well" in his assessment that Plaintiff "is doing well on opioids with no signs or symptoms of over sedation or side effects…." (AR 559.) Plaintiff subjectively reported her current pain level

was a nine; however, Dr. Paxton found Plaintiff "to be in no acute distress." (AR 557.) On his physical examination, Dr. Paxton found tenderness at Plaintiff's thoracic paraspinal muscles with evidence of crepitation, laxity, or instability, but normal range of motion at the thoracic spine without pain. (Id.) Dr. Paxton's physical examination of Plaintiff's lumbar spine noted tenderness to palpation of the lumbar facet; palpable lumbar spine trigger points; decreased lumbar spine range of motion; endorsed pain in the lumbar region while flexing anteriorly and with lumbar extension and bilateral flexion; positive Gaenslen's and Fabers tests bilaterally; deferred gait; inability to do heel walk or toe walk; decreased sensation to light touch and pinprick in the bilateral lower extremities; and positive straight leg raising bilaterally. (AR 21, 24, 557.) Dr. Paxton found the remaining physical examination normal, including full strength. (AR 557.) Dr. Paxton noted his plan was to schedule injections due to increasing mid and low back pain. (AR 558.) Dr. Paxton noted twice that Plaintiff reported "moderate relief from current medications and is moderately able to carry out activity of daily living"; "pain does not go away completely but it eases up to the point it's not debilitating"; and that Plaintiff "is moderately able to carry out daily routine physical activities and shown functional improvement and is able to do moderate socializing without any support or dependencies." (AR 558-559.) Dr. Paxton therefore noted his "plan is to continue with current medications and dosage." (AR 559.)

The ALJ is prohibited from "cherry-picking" the record to choose evidence unfavorable to the claimant while ignoring evidence favorable to the claimant. Ghanim v. Colvin, 763 F.3d 1154, 1164 (9th Cir. 2014). Here, however, the Court does not find the ALJ engaged in "cherry-picking" or "mischaracterized" Dr. Paxton's treatment notes or opinion. The ALJ could reasonably find, couched among the context of the record as a whole, that a patient "doing well," with reduced pain to a level four—which Dr. Paxton's same note documents he found her in "no acute distress" and her pain eases up to the point it is "not debilitating"—and the ability to perform activities of daily living to be inconsistent with and unsupportable of Dr. Paxton's opinion that, for example, Plaintiff "has the inability to sit for more than two hours total." (AR 24.) Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) ("The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation.")

The ALJ did not merely rely on Plaintiff's subjective reports that her pain level was reduced to a four, that she was able to perform daily activities, and that she was "doing well" in finding Dr. Paxton's opinion unpersuasive. The ALJ also noted the January 19, 2022 findings on physical examination were "generally within normal limits," including the thoracic spine range of motion and full strength in all extremities.  (AR 24.)  The ALJ accounted for some abnormal findings within the treatment notes; however, she concluded "they do not persuasively support all of the limitations identified" by Dr. Paxton, including the inability to sit for more than two hours.  (AR 24.)  Plaintiff argues the ALJ failed to explain why the abnormal findings, which were largely related to her lumbar spine, were insufficient to support Dr. Paxton's opinion.  (Mot. at 11-12.)  However, the ALJ found "no support" within Dr. Paxton's noted abnormal findings that would support Plaintiff's inability to sit for more than two hours total; a requirement for unscheduled breaks during a workday about every 30 minutes for five minutes each time; being off task 10% of a typical workday; and missing work two days per month.  (AR 24.)  Regarding supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions … will be."  20 C.F.R. § 404.1520c(c)(1).  The ALJ concluded Dr. Paxton's own January 19, 2022 abnormal findings, which included low back tenderness, pain with palpation, limited range of motion, painful extension and flexion, inability to do heel or toe walk, and deferred gait, do not "clear[ly] persuasive[ly] support," for example, an inability to sit for more than two hours. (AR 24-25.)  The ALJ's finding that Dr. Paxton's opinion is not supported by his same-day treatment notes is a valid reason to deem his opinion not persuasive.

However, even assuming, arguendo, the ALJ erred by not sufficiently explaining that Dr. Paxton's January 19, 2022 treatment notes are inconsistent with and do not support his January 19, 2022 opinion, the Court finds any error would be harmless because the ALJ provided additional reasons, supported by substantial evidence, for finding Dr. Paxton's opinion was not persuasive.  See Carmickle v. Comm'r of Soc. Sec., 533 F.3d 1155, 1162-63 (9th Cir. 2008) (finding the error in considering one of several reasons given in support of ALJ's finding was harmless because the remaining reasons and ultimate determination were supported by substantial evidence).  In addition

1   to finding Dr. Paxton's January 19, 2022 treatment notes are inconsistent with and do not support
2   the limitations to the extreme degree outlined in his same-day opinion, the ALJ found Dr. Paxton's
3   opinion "is not consistent with the record as a whole or any other medical opinion, as the other three
4   medical sources found the claimant significantly less limitations…." (AR 25.)

5       As to Dr. Paxton's opinion being inconsistent with the record as a whole, the ALJ detailed
6   the medical records pertaining to Plaintiff's history of thoracic and lumbar spine degenerative disc
7   disease and spondylosis with midthoracic scoliosis, right ankle ligament tears and tendinosis, and
8   obesity.  (AR 20.)  She began by detailing 2020 and 2021 imaging studies of Plaintiff's right ankle
9   and back, specifically detailing Plaintiff's ankle tears, disc protrusion, scoliosis, and canal stenosis.
10  (AR 20-21.)  The ALJ then noted that the record "at times mentions some abnormal findings on
11  physical exam," including:

12          endorsed pain with anterior neck flexion; middle thoracic spine
            tenderness and evidence of crepitus, laxity, or instability noted in
13          the thoracic spine; tenderness to palpation of the lumbar facet;
            palpable lumbar spine trigger points; decreased lumbar spine range
14          of motion; endorsed pain in the lumbar region while flexing
            anteriorly and with lumbar extension and bilateral flexion; positive
15          Gaenslen's and flexion, abduction, external rotation, and extension
            (FABERE) tests bilaterally; slow or deferred gait; inability to do
16          heel walk or toe walk; decreased sensation to light touch and
            pinprick in the bilateral lower extremities; and positive straight leg
17          raising bilaterally (e.g., Exs. 4F: 7, 11, 16; 7F: 11; 15F: 5; 16F: 2).

18  (AR 21, 24.)  The ALJ explained that these "objective findings, with reasonable consideration of
19  [Plaintiff's] subjective symptoms, such as *chronic pain attributable to the detailed abnormal*
20  *findings in the spine and right ankle*, complicated by morbid obesity, to the maximum degree
21  reasonably consistent with these findings are consistent with" modified light RFC.  (AR 21
22  (emphasis added).)  The ALJ further noted the combination of her findings "is consistent with
23  limiting the claimant to the light exertional level, and the claimant's right ankle findings, including
24  imaging evidence and findings of *slow or deferred gait and inability to heel or toe walk*, combined
25  with morbid obesity and *symptomatic thoracic and lumbar spine degenerative changes*, are
26  reasonably consistent" with modified light RFC.  (Id.)

27      The ALJ then described in detail objective findings on clinical examination that were in
28  "generally within normal limits" that supported a modified light RFC, which included:

14

chest clear to auscultation with no rales or rhonchi, intact alertness and orientation, normal affect and behaviors, judgment and reason, good hygiene, regular cardiovascular rate and rhythm, normal curvature of the cervical spine, no cervical spine tenderness or palpable trigger points in the muscles of the head and neck, no scoliosis, normal range of motion at the thoracic spine in both flexion and extension without pain, no tenderness of the greater trochanteric bursa on both sides, intact recent memory, normal mood and affect, full 5/5 motor strength in the bilateral upper and lower extremities, normal muscle tone with no atrophy noted, sensation grossly intact to light touch and pinprick throughout the bilateral upper and lower extremities, intact and symmetrical deep tendon reflexes, negative Romberg testing, intact ability to walk a couple steps on toes and heels holding an examiner's hands, normal finger to nose, and normal gait and station. Bilateral knee exam revealed no redness, heat, swelling, tenderness, effusions, ligamentous laxity, or crepitus; and bilateral ankle exams similarly revealed no redness, heat, swelling, tenderness, or deformities (e.g., Exs. 4-5F, 7F, 12F, 15-17F).

(AR 21-22.)  The ALJ ultimately noted that these objective exam findings "do not persuasively establish she is incapable of all work, including sedentary work. Her strength is full, gait is generally normal, and she does not use a cane or similar assistive device."  (AR 22.)

The ALJ then detailed treating records—including those by Dr. Paxton—wherein the Plaintiff subjectively reported that she was "doing fair and well" that treatment was helpful, easing her pain to the point that it was not debilitating and allowing her to "moderately[…]carry out activities of daily living," as well as "carry out daily routine physical activities" with "moderate functional improvement" and the ability to "do moderate socializing without any support or dependencies." (AR 22-23, 427-31, 551-55, 547-550, 542-46, 536-40, 556-61.)   The ALJ determined these records were indicative of "reasonably effective conservative treatment."  (AR 22-23.)

The ALJ therefore found Dr. Paxton's opinion was not consistent with the record as a whole. (AR 25.)  The Court finds substantial evidence supports the ALJ's finding that the limitations opined by Dr. Paxton were not consistent with the record as a whole which the ALJ noted generally showed Plaintiff's "strength is full, gait is generally normal, and she does not use a cane or similar assistive device."  (AR 22.)  The ALJ can reasonably find that even with the described abnormal findings—including pain on palpation, tenderness, and some limitation with range of motion—Dr. Paxton's opinion was overly restrictive based upon the "generally normal findings" in the record.

15

1   The Court finds the ALJ could therefore reasonably reach the conclusion that Dr. Paxton's opinion
2   was not persuasive in the context of the record as a whole.  See Burch, 400 F.3d at 679 (noting that
3   where the evidence is susceptible to more than one rational interpretation, it is the ALJ's decision
4   that must be upheld).  The ALJ's finding that Dr. Paxton's opinion is inconsistent with the record
5   as a whole is a valid reason to deem his opinion not persuasive.

6       The ALJ also found that Dr. Paxton's opinion is not consistent with any other medical opinion.
7   Such a finding cannot logically be disputed.  In contrast to Dr. Paxton's opinion, state agency
8   consultants G. Dale, M.D. and J. Lane, M.D. "found that the claimant could essentially perform
9   medium work" in their March 2021 and June 2021 opinions. (AR 23, 65-69, 84-87.)  In their
10  respective assessments, Dr. Dale and Dr. Lane both opined Plaintiff could carry 50 pounds
11  occasionally, carry 25 pounds frequently, and sit, stand, and/or walk for about six hours in an eight
12  hour workday.  (AR 67.)  The ALJ noted Dr. Dale considered Plaintiff's "low back pain in
13  conjunction with the medical evidence, such as largely normal findings on physical examination,
14  including normal ranges of motion, negative straight leg raising, and normal, stable knees." (AR 23,
15  64-65.)  Additionally, Dr. Dale and Dr. Lane found Plaintiff was limited to "frequently climbing
16  ramps or stairs; occasionally climbing ladders, ropes, or scaffolds; frequently balancing, stooping,
17  kneeling, crouching, or crawling; and avoiding concentrated exposure to hazards." (AR 23, 65-69,
18  84-87.)  The ALJ found the consultants' opinions are "supported by a review of much of the medical
19  evidence, a reasonable explanation with specific references to the record, and their disability
20  program knowledge and experience."  (AR 24.)

21      The ALJ also noted that in March 2021, a third medical source, Roger Wagner, M.D.
22  "essentially determined that claimant could perform medium work, except she was limited to
23  frequent stooping and occasional climbing and crouching, due to ankle problems with chronic tears
24  shown on MRI of the right ankle." (AR 23.)  Dr. Wagner opined Plaintiff's maximum standing and
25  walking capacity was up to six hours with normal breaks; she had no limitations on maximum sitting
26  capacity; she could lift and carry 50 pounds occasionally and 25 pounds frequently The ALJ noted
27  Dr. Wagner stated the Plaintiff's low back pain "appeared mostly consistent with occasional
28  muscular ligamentous strain exacerbated by body habitus and ankle pain from tendon problems of

the ankles, again likely exacerbated by body habitus." (AR 23, 419.) Dr. Wagner noted in his observations that Plaintiff "was easily able to get out of the chair in the waiting room and walk at a normal speed back to the exam room without assistance. She sat comfortably. She was easily able to get on and off the exam table and easily able to bend at the waist to take off shoes and socks and put them back on, demonstrating good dexterity and good flexibility." (AR 417.) Notably, Dr. Wagner also evaluated some abnormal findings—including limitations in performing the heel and toe walk and varying flexion and extension of the spine—and determined Plaintiff was able to perform essentially medium work. (AR 417-20.) The ALJ determined Dr. Wagner's opinion "is supported by his thorough exam and detailed report." (AR 24.)

The ALJ noted Dr. Paxton's limitations are not consistent with Dr. Wagner, Dr. Dale, or Dr. Lane's opinions, which the ALJ notes "found the claimant significantly less limited…." (AR 25.) These three medical opinions support the ALJ's determination. Despite these findings by the ALJ, however, Plaintiff argues "the ALJ did not credit those opinions," "found they did not adequately address Plaintiff's chronic pain and other symptoms," and "essentially conceded [the other opinions] fail to reflect the reality of the medical records." (Mot. 12.) The Court disagrees with each of these contentions. As discussed, the ALJ expressly credited Dr. Wagner, Dr. Dale, and Dr. Lane's opinions when she addressed their findings in length and found them "mostly persuasive." (AR 24.) Further, the ALJ credited Dr. Wagner, Dr. Dale, and Dr. Lane when explaining why she discounted Dr. Paxton's opinion as being "not consistent with…any other medical opinion, as the other three medical sources found the claimant significantly less limited, as previously discussed." (AR 25.)

Notably, Plaintiff does not specifically dispute any of Dr. Dale or Dr. Lane's findings. Plaintiff also does not dispute any specific findings by Dr. Wagner. Rather, Plaintiff finds fault in Dr. Wagner's opinion because he "assessed only low back pain and ankle pain"; however, as Defendant notes, Dr. Wagner assessed Plaintiff based on her own chief complaints, namely, "low back pain and ankle pain." (AR 416.) Further, Plaintiff argues Dr. Wagner did not have access to the post-examination imaging and Plaintiff had not yet been recommended injections; however, the ALJ found Dr. Wagner's opinion was consistent with the longitudinal record and "[s]ubsequent treatment records do not persuasively warrant greater limitations." (AR 24.)

As to Plaintiff's argument that the ALJ "found" Dr. Wagner, Dr. Dale, and Dr. Lane's opinions did not adequately address Plaintiff's chronic pain and other symptoms, the ALJ specifically detailed the findings within the opinions which she did not find persuasive, which Plaintiff does not contest.[6]  While the three "mostly persuasive" medical opinions recommended "medium work," the ALJ noted she would further limit Plaintiff to "light exertional work" to "more thoroughly address[] the claimant's pain as well as the exacerbating effect of the claimant's morbid obesity on her chronic pain and other symptoms."  (AR 24.)  The Court underscores that the RFC assessment is an administrative finding based on all relevant evidence in the record, not just medical evidence.  Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).  In determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are credible and supported by substantial evidence in the record.  Id. (noting that an RFC determination will be affirmed if supported by substantial evidence).  An ALJ's RFC findings need only be *consistent* with relevant assessed limitations but need not be *identical* to them.  See Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222-23 (9th Cir. 2010).  Ultimately, RFC is a matter for the ALJ to determine.  The ALJ is not required to adopt the findings or opinion of any of the physicians but rather is required to determine the RFC based on all of the evidence in the record.  See 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner."); Rounds v. Comm'r of Soc. Sec., 807 F.3d 996, 1006 (9th Cir. 2015) ("the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC"); Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.").

Here, the ALJ reviewed the longitudinal record, cited inconsistencies within Dr. Paxton's

---

[6] The ALJ explained the consultant's "limitation regarding avoiding hazards is not fully supported by objective medical evidence in the record. For example, pain management records mentioned that the claimant was advised to avoid driving or operating dangerous machinery until she became stable on her narcotic medication, but she has been generally noted as stable on these medications without symptoms or signs of oversedation or other side effects, and she was able to moderately carry out activities of daily living, carry out daily routine physical activities, and do moderate socializing without any support or dependencies on this treatment (e.g., Exs. 4F: 9, 13, 18; 16F). In addition, the claimant reported she was able to drive, as previously discussed, consistent with the capacity to handle similar hazards adequately, and Dr. Wagner did not find such a limitation warranted."  (AR 24.) Plaintiff does not challenge this finding.

same-day notes as described above, and evaluated the four medical opinions.  In conjunction with all relevant evidence on the record, the ALJ considered three consistent medical opinions opining Plaintiff could perform medium work and one opinion that opined "extreme" limitations.  As the "final arbiter with respect to resolving ambiguities in the medical evidence," the ALJ found Dr. Paxton's opinion was inconsistent and unsupported by his own same-day treatment notes, the record as a whole, and each of the three medical opinions.  Tommasetti, 533 F.3d at 1041–42; see also Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1994) (concluding that it is "solely the province of the ALJ to resolve conflict[s]" between medical opinions).  The Court finds the ALJ's conclusion is supported by substantial evidence.  The fact that the ALJ's RFC findings are not identical to Dr. Wager, Dr. Lane, and Dr. Dale's opinions does not equate to Plaintiff's argument that the ALJ determined the opinions "did not adequately address Plaintiff's chronic pain and other symptoms," and "essentially conceded [the other opinions] fail to reflect the reality of the medical records." (Mot. 12.)  The ALJ's finding that Dr. Paxton's opinion is inconsistent with the record as a whole, supported by substantial evidence, is a valid reason to deem his opinion not persuasive.

Accordingly,  after viewing the ALJ's reasoning in light of the record as a whole, the Court concludes that the ALJ's finding that Dr. Paxton's opinion was not persuasive was supported by substantial evidence after proper consideration of the supportability and consistency factors.

**B.      Whether the ALJ erred in evaluating Plaintiff's subjective complaints**

Plaintiff also argues the ALJ failed to identify clear and convincing reasons for discounting her subjective complaints, which resulted in an RFC determination that failed to account for the nature and intensity of Plaintiff's limitations.  (Mot. 9.)  Plaintiff avers that the ALJ's finding that Plaintiff's statements regarding intensity, persistence, and limiting effects of her symptoms are not consistent with the record and is not supported by substantial evidence because the ALJ failed to articulate a clear and convincing reason for discounting Plaintiff's alleged symptoms of severe pain. (Id. at 14.)  Defendant avers the ALJ reasonably found Plaintiff's alleged extreme functional limitations were inconsistent with the objective medical evidence and overall record.  (Opp'n 7.)

1.      Legal Standard

A claimant's statements of pain or other symptoms are not conclusive evidence of a

physical or mental impairment or disability.  42 U.S.C. § 423(d)(5)(A); SSR 16-3p; see also Orn, 495 F.3d at 635 ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.").  Rather, an ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  See Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; SSR 16-3p, at *3.  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82.  If the claimant satisfies the first step and there is no evidence of malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so."  Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations omitted).

If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive.  The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.  In this regard, questions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary.  Valentine v. Astrue, 574 F.3d 685, 693 (9th Cir. 2009) (quotation omitted); see also Lambert, 980 F.3d at 1277.

In addition to the medical evidence, factors an ALJ may consider include the location, duration, and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; conflicts between the claimant's testimony and the claimant's conduct—such as daily activities, work record, or an unexplained failure to pursue or follow treatment—as well as ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, internal contradictions in the claimant's statements and testimony, and other testimony by the claimant that appears less than candid.  See Ghanim, 763 F.3d at 1163; Tommasetti, 533 F.3d at 1039; Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007); Smolen, 80 F.3d at 1284.  Thus, the ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of her symptoms; statements and

1  other information from medical providers and other third parties; and any other relevant evidence

2  included in the individual's administrative record.  SSR 16-3p, at *5.

3        2.    <u>Analysis</u>

4        The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be

5  expected to cause her alleged symptoms; however, her "statements concerning the intensity,

6  persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical

7  evidence and other evidence in the record…."  (AR 20.)  Because there is no evidence of

8  malingering, the issue is whether the ALJ provided clear, and convincing reasons to find that

9  Plaintiff's symptoms were not as severe as she alleged.

10        The ALJ acknowledged Plaintiff's subjective complaints as follows:

11        The claimant alleges that a back injury prevents her from working
        (Ex. 2E). Her documented subjective complaints include worsening
12        back pain, described as sharp and stabbing, at a severity of around 6
        to 9 out of 10, radiating to the lower extremities and hips, with
13        numbness and tingling in the lower extremities, such that she "could
        barely walk." She reported inability to stand for long periods,
14        constant pain with walking, right ankle swelling and pain daily, right
        shoulder pain, difficulty sleeping and being limited to sleeping about
15        5 to 6 hours a night, at times inability to stand up straight or walk
        due to pain, difficulty getting into her car due to pain after a three-
16        day training at McDonald's, at times inability to sit back down after
        getting up, and at times inability to get out of bed due to pain. She
17        needed to use a right ankle brace because of residual symptoms from
        an old right ankle fracture. She also reported tiredness or sleepiness
18        as a side effect of Norco. The claimant subjectively reported
        difficulties lifting over 2 to 3 pounds, squatting, bending, standing,
19        reaching, walking for longer than one hour without sitting and
        resting, getting back up, kneeling, stair climbing, completing tasks
20        or focusing due to constant spasms and pain. She reported she
        needed assistance some days to get dressed, needed "lots of help"
21        from her husband (including with getting out of a chair, going up
        and down stairs, getting in and out of a car, and at times to walk),
22        and needed a heated seat to drive. She reported using a heating pad
        almost daily and being limited to driving about 20 or 30 miles with
23        a heated seat. She also reported difficulty finishing her housework
        or other chores, due to pain, spasms, and stiffness….The claimant
24        reported using no assistive devices, other than the ankle brace,
        which was not prescribed by a doctor, when she went out (e.g., Exs.
25        2E, 4E, 8-9E, 3-4F).

26  (AR 19-20.)

27        The ALJ also noted that Plaintiff testified at the hearing on February 16, 2022 that without

28  medication, her pain level on an average day is "between a 9 and a 10" but is reduced to "a 1 or 2"

with medication.  (AR 23, 45.)  Plaintiff also testified she can lift 30 pounds without aggravating her pack pain.  (AR 23, 50.)  As discussed below, the Court finds that the ALJ provided clear and convincing reasons to find that Plaintiff's symptoms were not as severe as alleged.

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the medical evidence and other evidence in the record.  (AR 20.)  As previously discussed, the ALJ began by laying out an overview of imaging studies of Plaintiff's right ankle and spine, detailing the tearing in Plaintiff's ankle and disc protrusion, scoliosis, and canal stenosis.  (AR 20-21, 393-94, 481-82, 520-21.)  The ALJ extracted mentions of both normal and abnormal findings on physical exams throughout Plaintiff's medical records.  (AR 21-22.)  The ALJ determined the imaging and abnormal physical examination findings coupled with "reasonable consideration" of Plaintiff's subjective symptoms, such as chronic pain attributable to the abnormal findings in the spine and right ankle, complicated by morbid obesity, are consistent with modified light RFC.  (AR 21.)  While accounting for specific abnormal findings, the ALJ determined the objective findings on clinical examination are generally within normal limits and opined the largely normal findings are consistent with no greater functional limitations than modified light RFC.  (AR 21, 22.)

Plaintiff argues that the ALJ indiscriminately referenced nearly all of medical records, with no explanation as to how the abnormal findings in those records were considered, which is not sufficiently specific to constitute a clear and convincing reason for discounting Plaintiff's subjective pain. (Mot. 14.)  The Court disagrees and finds the ALJ provided clear and convincing reasons why Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms are not supported by the medical findings.  The ALJ detailed both abnormal and normal findings within the records and then specifically included those findings—including abnormal findings—in her determination.  For example, after her summary of objective evidence, the ALJ found Plaintiff's "right ankle findings, including imaging evidence and findings of slow or deferred gait and inability to heel or toe walk, combined with morbid obesity and symptomatic thoracic and lumbar spine degenerative changes, are reasonably consistent with" modified light residual functional capacity. (AR 21.)  The ALJ also noted that objective findings, "such as chronic pain attributable to the above

abnormal findings in the spine and right ankle" are consistent with modified light RFC.  (AR 21.)
The ALJ determined that that the objective medical evidence does "not persuasively establish
[Plaintiff] is incapable of all work, including sedentary work," as Plaintiff's "strength is full, gait is
generally normal, and she does not use a cane or similar assistive device."  (AR 22).  The Court
finds the ALJ could reasonably find that Plaintiff's testimony regarding the limiting effects of her
symptoms (AR 19-20), was not as severe as alleged based on the ALJ's review of the longitudinal
record.  The Court therefore finds the ALJ provided clear and convincing reasons why Plaintiff's
statements concerning the intensity, persistence, and limiting effects of her symptoms were not
supported by the medical findings.

   Plaintiff argues inconsistency with objective evidence cannot be the sole basis for
discounting subjective pain.  (Mot. 14.)  The Court agrees.  See Vertigan, 260 F.3d at 1049 ("The
fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and
of itself, is not a clear and convincing reason for rejecting it."); see also 20 C.F.R. § 404.1529(c)(2)
("[W]e will not reject your statements about the intensity and persistence of your pain or other
symptoms or about the effect your symptoms have on your ability to work solely because the
available objective medical evidence does not substantiate your statements.").  Rather, where a
claimant's symptom testimony is not fully substantiated by the objective medical record, the ALJ
must provide an additional reason for discounting the testimony.  See Burch, 400 F.3d at 680–81.

   The ALJ also provided specific examples of Plaintiff's subjective reports in historic
treatment records that reflect reasonably well-controlled symptoms with conservative treatment that
the ALJ found are not entirely consistent with or do not fully support Plaintiff's statements
concerning intensity, persistence, and limiting effects of the symptoms.  (AR 22.)

   The ALJ specifically noted that in a February 2021 pain management record, Plaintiff
reported "doing fair and well," with 50% pain relief and exercise, home exercise programs, and
opioid medications, and that the treatment was helpful, easing her pain "to the point that it was not
debilitating" and allowing her to "moderately…carry out activities of daily living," as well as the
ability to "carry out daily routine physical activities" with "moderate functional improvement" and
the ability to "do moderate socializing without any support or dependencies."  (AR 23, 400-403.)

1   Plaintiff's pain management records consistently document identical or similar reports.  (AR 427-

2   31, 551-55, 547-550, 542-46, 536-40, 556-61.)

3        The ALJ also noted that in December 2021, Dr. Paxton's pain management records reflected

4   ongoing improvement with treatment, stating Plaintiff's pain levels were generally maintained at a

5   severity of four out of ten, she experienced pain relief of 50 to 75% with exercises, and she was

6   engaged in a home exercise program and was taking medications, which were consistent with

7   reasonably effective treatment.  (AR 23, 536-40.)  The ALJ specifically noted that Plaintiff reported

8   increased pain in December 2021; however, the ALJ described Plaintiff's own report that the

9   increase was "due to her shoveling snow," which the ALJ found to be physically demanding activity

10  generally exceeding modified light RFC.  (AR 23, 538.)   Light v. Soc. Sec. Admin., 119 F.3d 789,

11  792 (9th Cir. 1997), as amended on reh'g (Sept. 17, 1997) (credibility determination can be based

12  on conflicts between the claimant's testimony and his own conduct, or on internal contradictions in

13  that testimony).  The ALJ specifically noted that the fact Plaintiff  "engaged in such an activity also

14  demonstrates greater capacity for work activity than alleged, as her symptoms were well-controlled

15  to the extent that she attempted it."  (AR 23.)  The ALJ also noted that the December 29, 2021

16  treatment date was the same date Dr. Paxton recommended Plaintiff undergo injections for her

17  exacerbated symptoms. (AR 23, 538.)  The ALJ's finding that Plaintiff engaged in activity that

18  conflicted with her symptom testimony is a clear and convincing reason to reject Plaintiff's

19  symptom testimony.

20       Plaintiff contends the ALJ "selectively rel[ies] on Plaintiff's subjective reports of pain,

21  wholly muddling the issue of whether Plaintiff's reported pain should be credited."  (Reply 4.)

22  Plaintiff specifically argues the ALJ noted Plaintiff testified her subjective pain was "only 2 or 4 to

23  discount her alleged symptoms, while ignoring or discounting instances where her subjective pain

24  was 8 or 9."  (Id.)  However, as previously discussed, the context of the one, two, and four pain

25  ratings were Plaintiff's own reports of pain when she was taking medication.  Plaintiff does not

26  dispute this finding or point to specific evidence in record stating the contrary.  When discussing

27  adequately controlled symptoms with conservative treatment, the ALJ did note that Plaintiff

28  testified that her pain medication "reduces her pain to a 1 to a 2 on a scale of 10, and she can lift 30

24

pounds" without aggravating her back pain.  (AR 23, 45, 52.)  The ALJ also noted Plaintiff's report in her pain management medical records that her pain would reduce to a four with medication.  (AR 23, 24.)  Important to the ALJ's decision-making is that "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).  The Court finds it was reasonable for the ALJ to note Plaintiff's consistent subjective reports that her pain would reduce and was adequately controlled with medications for the purpose of determining the RFC.

Evidence that a claimant's medical treatment was relatively conservative may also properly be considered in evaluating a claimant's subjective complaints.  See Tommasetti, 533 F.3d at 1039–40; Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.") (citation omitted).  Here, the ALJ noted multiple treatment records stating Plaintiff was "doing well on opioids with no sign of symptoms of oversedation or side effects."  (AR 23, 403, 407, 430, 539, 545, 559; see also 549 ("patient reports pain controlled with current medications and doing well").)  These same records state Plaintiff "reports moderate relief from current medications and is moderately able to carry out activity of daily living", "[p]ain does not go away completely but it eases up to the point its [sic] not debilitating," or "medications help to maintain pain levels." (AR 403, 406, 429, 538, 544, 549, 559).  As to conservative treatment, the ALJ noted Plaintiff's recommendation for injections for exacerbated symptoms but noted Plaintiff had not undergone the injections when the ALJ's findings were issued.  (AR 23.)  The ALJ determined Plaintiff's "treatment has been limited, as she has not undergone physical therapy, chiropractic care, acupuncture, injections, nerve blocks or other more aggressive modalities such as surgical treatment for the spine, suggesting her symptoms were not so severe as to necessitate greater treatment and reasonable consistent with adequately controlled symptoms on conservative treatments." (AR 23.)  Ninth Circuit caselaw supports the ALJ's determination that Plaintiff's treatment was conservative.  See Woods, 32 F. 4th at 794 (affirming ALJ's discounting of subjective testimony based on "very conservative" treatment of mostly medication alone and a knee injection); Warre, 439 F.3d at 1006;

1  Agatucci v. Berryhill, 721 Fed. App'x 614, 618 (9th Cir. 2017) ("We uphold [the] ALJ's rational

2  interpretation that, because [plaintiff's] condition did not necessitate surgery, her symptoms were

3  not as debilitating as she alleged").   The ALJ's finding that Plaintiff's adequately controlled

4  symptoms on conservative treatment are "seemingly inconsistent with the symptoms of the

5  disabling severity alleged" is a clear and convincing reason in support of discounting Plaintiff's

6  subjective testimony.

7         The ALJ also considered Plaintiff's ability to perform a range of activities of daily living

8  ("ADLs").  An ADL may be grounds for discounting allegations that an impairment is so severe it

9  is totally debilitating, even if such activities are not directly transferrable to a work setting.  See

10  Molina v. Astrue, 674 F.3d 1104, 1112–13 (9th Cir. 2012), superseded by regulation on other

11  grounds (noting "the ALJ may discredit a claimant's testimony when the claimant reports

12  participation in everyday activities indicating capacities that are transferrable to a work setting …

13  Even where those activities suggest some difficulty functioning, they may be grounds for

14  discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating

15  impairment.") (internal citations omitted); see also Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989)

16  (affirming the ALJ's decision where the claimant's allegations were inconsistent with activities of

17  personal care, shopping, chores, riding public transportation, and driving); Burch, 400 F.3d at 680

18  (finding the ALJ properly discounted the claimant's allegations where the claimant's activities

19  suggest higher functionality, including caring for personal needs, cooking, cleaning, shopping, and

20  interacting with family).

21         Here, the ALJ extensively detailed Plaintiff's ADLs:

22         [D]espite her subjective symptoms and difficulties, the claimant was
           able to lift and carry light items, such as a purse, phone, and jacket.
23         She was able to do a relatively intact range of activities of daily
           living, including maintaining generally independent basic personal
24         care, preparing her own simple meals approximately weekly for 30
           minutes to an hour at a time, cleaning the bathroom for about 10 to
25         20 minutes (including the toilet and counter) and making her bed,
           help with household chores such as cleaning and laundry without
26         encouragement for about an hour or two at a time, helping to care
           for a pet cat (including feeding and giving water), and shopping in
27         stores for necessities when needed for 30 minutes to an hour at a
           time. The claimant was able to help care for a pet cat, including
28         cleaning and changing the litter box, feeding, and giving water. She

26

was also able to go outside every other day to every 2 to 3 days, and she was able to climb stairs with a railing. She was able to drive a car with a heated seat and right ankle brace, and she drove herself to a consultative examination. She was also able to manage her own finances without change since her conditions began and pay attention for several hours at a time, as well as engage in hobbies and interests of reading, television, movies, and coloring. She did these hobbies daily and "very well." Similarly, she was able to follow written and spoken instructions, get along with authority figures, and handle stress and changes in routine all "very well." Her husband reported that she was able to attend church and social groups on a regular basis, as well as spend time with others in person, on the phone, by texting, and through video chat. She attended movies, gatherings, and dining out, with others "all the time," and Mr. Goltz stated that the claimant was able to travel out of town for activities, with some help walking and getting out of chairs (e.g., Exs. 4E, 8-9E, 5F).

(AR 22.)  The ALJ noted the range of daily activities is consistent with modified light RFC.  (Id.)

The ALJ found Plaintiff's extensive "range of daily activities are inconsistent with functional limitations to the degree alleged."  (AR 22.)  See Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022) (finding an ALJ reasonably determined a claimant's ADLs, which included laundry, grocery shopping with assistance, and completing various chores "albeit in short increments due to pain," were inconsistent with alleged severity of pain).  Plaintiff argues the ALJ failed to support the assertion that her daily activities are inconsistent with her alleged symptoms or are transferrable to a work setting.  (Mot. 15.)  While the Court finds the ALJ could have made explicit additional explanatory connections between her findings regarding daily activities and why they were inconsistent with the Plaintiff's reported limitations, the Court finds sufficient support in the record to find the ALJ's reason was clear and convincing.  See id. ("The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince."); Kaufmann v. Kijakazi, 32 F.4th 843, 851–52 (9th Cir. 2022) ("Looking to the entire record, substantial evidence supports the ALJ's conclusion that Claimant's testimony about the extent of her limitations conflicted with the evidence of her daily activities, such as sewing, crocheting, and vacationing."); Lopez v. Colvin, No. 1:13-CV-00741-SKO, 2014 WL 3362250, at *16 (E.D. Cal. July 8, 2014) ("While the ALJ did not explain that Plaintiff's daily activities were *consistent* with specific work activity, the ALJ found Plaintiff's daily activities were *inconsistent* with the severity of symptoms he alleged . . . [b]ecause Plaintiff's daily activities

1    were inconsistent with the disabling symptoms he alleged, the ALJ properly found such claims not

2    credible"); Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989) ("[W]e are not deprived of our

3    faculties for drawing specific and legitimate inferences from the ALJ's opinion.").

4         The Court also finds Plaintiff's arguments that the ALJ merely listed examples with a broad

5    citation to all exhibits and therefore failed to discuss or weigh the evidence with any specificity to

6    be unavailing.  (Reply 3.)  ALJs are not required to perform a line-by-line exegesis of the claimant's

7    testimony, nor do they require ALJs to draft dissertations when denying benefits." Lambert v. Saul,

8    980 F.3d 1266, 1277 (9th Cir. 2020).  Rather, "the 'clear and convincing' standard requires an ALJ

9    to show [their] work." Smartt, 53 F.4th at 498.   Plaintiff does not otherwise argue the ALJ

10   misrepresented any activities of daily living, abnormal findings, or Plaintiff's subjective testimony.

11   Instead, Plaintiff essentially requests the Court to find the ALJ should have reached a different

12   conclusion.  The Court, however, finds the record demonstrates the ALJ "showed [her] work" and

13   reached a rational interpretation of the record.  Id.   She specifically discussed and weighed the

14   medical evidence in a detailed degree, including both normal and abnormal findings contained

15   therein.  The ALJ also discussed and analyzed Plaintiff's subjective testimony and provided specific

16   evidence of inconsistency when supporting her assessment.  (See, e.g., AR 22-23.)  It is not this

17   Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the

18   ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's

19   conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch, 400 F.3d at 679).  The

20   Court finds the ALJ reached a rational interpretation when finding Plaintiff's statements are not

21   entirely consistent with the evidence on the record.

22        Accordingly, the Court finds no error in the ALJ's analysis of Plaintiff's statements

23   concerning the intensity, persistence and limiting effects of her symptoms as the ALJ provided clear

24   and convincing reasons to reject Plaintiff's statements regarding the severity of the alleged

25   symptoms.

26                                          **V.**

27                          **CONCLUSION AND ORDER**

28        In conclusion, the Court denies Plaintiff's Social Security appeal and finds no harmful error

warranting remand of this action.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Rebecca Anne Goltz.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **March 26, 2024**

_____
UNITED STATES MAGISTRATE JUDGE